UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HEATHER BERARD,

    Plaintiff,

v.                                                    CASE NO: 8:10-cv-2221-T-26MAP

WAL-MART STORES EAST, L.P.,

    Defendant.
_____/

**O R D E R**

Before the Court is Defendant's Motion for Summary Judgment (Dkt. 30), Defendant's Statement of Undisputed Facts (Dkt. 31), and various exhibits, affidavits and depositions in support of the motion (Dkts. 32, 33 & 34), and Plaintiff's Response in Opposition with depositions and attachments, together with a Statement of Disputed Facts. (Dkts. 40 & 41). After careful consideration of the motion, the submissions of the parties, and the entire file, the Court concludes that the motion should be denied in part and granted in part.

**Background**

Plaintiff Heather Berard, an employee of Wal-Mart Stores East, L.P. (Wal-Mart),[1] suffered a diabetic event on March 10, 2010, during her shift in the meat department. She began vomiting and had a seizure, and was dragged into the meat cooler.[2] Someone went to her locker, retrieved the insulin, and brought it to Plaintiff.[3] Plaintiff administered the loaded syringe to herself, but she was rushed to the emergency room.[4] She never returned to work for Wal-Mart.[5] Plaintiff brings this suit pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. (ADA), the Florida Civil Rights Act of 1992, Chapter 760, Florida Statutes (FCRA), and two state common law claims, negligent and intentional infliction of emotional distress.[6] The following facts are presented in the light most favorable to the non-moving party, Plaintiff, as is required for

---

[1] Defendant avers that Wal-Mart Stores East, L.P. is a wholly-owned subsidiary of Wal-Mart Stores, Inc., "the ultimate parent corporation," and as such, Wal-Mart Stores East, L.P. is the proper party Defendant. See docket 33-2, Affidavit of Geoffrey W. Edwards, Esq.

[2] See docket 40, Exh. A, Deposition of Heather Berard, pp. 68-71.

[3] See docket 40, Exh. A, Depo. of Berard, pp.71-72.

[4] See docket 40, Exh. A, Depo. of Berard, pp. 71-72, 76.

[5] See docket 40, Exh. A, Depo. of Berard, p. 79.

[6] The Court notes, however, that the Disabilities Act Amendment Act of 2008 (the ADAAA) appears to apply to this case because the alleged discrimination took place at the very least in November 2009, which is the time Plaintiff was employed by Wal-Mart. See, e.g., Kintz v. United Parcel Serv., Inc., 766 F.Supp.2d 1245 (M.D. Ala. 2011).

summary judgment purposes. See Arrington v. Cobb County, 139 F.3d 865, 871 (11th Cir. 1998); Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).

**Pertinent Facts**

Plaintiff Heather Berard was employed by Defendant Wal-Mart from November 4, 2009, until March 10, 2010. Over one year prior to her employment, Plaintiff was diagnosed with new onset Type I diabetes when she was hospitalized in August 2008.[7] During most of Plaintiff's employment with Wal-Mart, she was permitted to keep her testing and maintenance equipment for her diabetic condition on a desk near the meat department where she worked.[8] Her supervisor John Holmes had always permitted her to keep her needles, insulin, and tester in her purse near where she worked.[9] Sometime in February 2010, about two or three weeks prior to her last day at work with Wal-Mart, however, she was told by a manager that she could no longer keep her diabetic equipment on the desk.[10] She then moved her belongings to the coat closet in the meat department which was about a foot and a half behind the desk.[11] One night her belongings were locked in that coat closet, and she had to have the lock cut open.[12]

---

[7] See docket 34-4, deposition of Anthony D. Morrison, M.D., pp. 9-11.

[8] See docket 40, Exh. A, Deposition of Heather Berard, p. 57.

[9] See docket 40, Exh. A, Depo. of Berard, pp. 56-57, 61-62.

[10] See docket 40, Exh. A, Depo. of Berard, pp. 59-60, 63.

[11] See docket 40, Exh. A, Depo. of Berard, p. 57.

[12] See docket 40, Exh. A, Depo. of Berard, p. 60.

She then started placing her medical supplies in the drawer in the desk she originally used for her purse.[13] At that time, she was told by Wendy Mincheff, an assistant manager, that she had to put her testing kit and insulin in the back of the store in a locker and that she would be terminated if she left during her work hours to go back to the locker.[14] Plaintiff objected to this new requirement because the location of the desk and coat closet was significantly cooler and closer than the back of the store where the lockers where located.[15] Plaintiff contended that she needed to keep the insulin at a cooler location than the back where it was not sufficiently cooled by air-conditioning.[16] She was told that the refrigerator was cleaned out at 9:00 p.m. every night and her shift did not end until 10:00 p.m.; therefore, her testing and treatment supplies would be thrown out before her shift was over.[17] She also testified that she tested her blood sugar often and needed her equipment closer to her than the back of the store where the lockers were located.[18]

---

[13] See docket 40, Exh. A, Depo. of Berard, p. 61.

[14] See docket 40, Exh. A, Depo. of Berard, pp. 63, 66.

[15] See docket 40, Exh. A, Depo. of Berard, pp. 52, 66.

[16] See docket 40, Exh. A, Depo. of Berard, pp. 52-53.

[17] See docket 40, Exh. A, Depo. of Berard, p. 53.

[18] See docket 40, Exh. A, Depo. of Berard, pp. 66, 73. The Court is well aware that Wendy Mincheff's testimony is contradictory to Plaintiff's testimony. For instance, Mincheff claims that she never told Plaintiff that she had to move her medicine and testing kits, and Plaintiff never mentioned needing an accommodation for her medicine and testing kit. See docket 34-6, Depo. of Wendy Mincheff. Matters of witness

With respect to Plaintiff's responses to questions asked about whether there was any essential function or physical activity of her job she could not perform, she responded that she could perform all of the essential functions and physical activities of the position of meat sales associate.[19] The essential functions of the job of meat sales associate include providing customer service, maintaining merchandise presentation, maintaining specific areas, receiving and stocking merchandise, following company policies, and providing meat products to customers.[20] The listed physical activities required of a meat sales associate entail the following: visually locating merchandise; reading small print; reaching overhead and below the knees with bending, twisting, pulling, and stooping; observing associate behavior; moving, lifting and carrying supplies weighing less than twenty-five pounds; moving up and down a ladder; and grasping, turning and manipulating objects requiring fine motor skills.[21]

## Standard of Review

Summary judgment is proper only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The facts must be viewed, and all reasonable inferences

---

credibility, however, may not be considered at the summary judgment stage, and the parties are in the best position to attempt to predict their chances at trial.

[19] See docket 34-1, 34-2, Depo. of Berard, pp. 41-43, Exhs. 4 & 5.

[20] See docket 34-2, Depo. of Berard, Exh. 5.

[21] See docket 34-2, Depo. of Berard, Exh. 5.

drawn, in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Credibility determinations, however, are best addressed at trial. Anderson, 477 U.S. at 255, 106 S.Ct. at 1513-14.

## Plaintiff's Disability

To show a *prima facie* case of discrimination based on the failure to accommodate, Plaintiff must show three elements: (1) that she has a disability; (2) that she is a "qualified individual" such that she could perform the essential functions of her position with or without accommodation; and (3) that she was discriminated against because of her disability. Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001). For purposes of this summary judgment, Defendant Wal-Mart concedes that Plaintiff's diabetes is a disability as defined under the ADA, and thus meets the first prong of a

*prima facie* case.²² Wal-Mart does not concede, however, that Plaintiff can show the second and third prongs of a *prima facie* case.

### Reasonable Accommodation

Wal-Mart focuses on the second prong— that Plaintiff could perform the essential functions of a meat department associate with or without accommodation. Specifically, Wal-Mart contends that Plaintiff could perform the essential functions of her job without accommodation because there was no essential function of her job that she could not perform due to her diabetes. Essentially, Wal-Mart argues that there was no need for a

---

²² The Court notes that under 42 U.S.C. § 12102(2), a "disability" is defined, for purposes of this case under the first of three definitions, as an individual with "a physical . . . impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). Under the old, pre-2008 amendment standard, determining whether a particular physical impairment is sufficient to establish a disability looked to the "mitigating measures . . . in judging whether an individual possesses a disability." Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 565, 119 S.Ct. 2162, 2169, (1999) (reversing summary judgment, holding that amblyopia is not necessarily a disability for each individual afflicted by it, citing Sutton v. United Air Lines, Inc., 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999)). Under the new standard of the Americans with Disabilities Amendments Act of 2008 (ADAAA), "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as . . . medication, medical supplies, equipment, or appliances." 42 U.S.C. § 12102(4)(E)(i)(I), which became effective January 1, 2009. By the ADAAA's adoption, "Congress has expressly instructed courts that '[t]he definition of disability in [the ADA] shall be construed in favor of broad coverage of individuals.'" Fikes v. Wal-Mart, Inc., 322 Fed.Appx. 882 n. 1 (11ᵗʰ Cir. 2009) (unpublished opinion) (refraining from applying ADAAA because ADA "was in effect at the time of the alleged discrimination"); Kintz v. United Parcel Serv., Inc., 766 F.SUPP.2d 1245, 1253 (M.D. Ala. 2011) (noting Sutton's inapplicability to cases under the ADAAA). In this case, there is no question that Plaintiff did not even work for Wal-Mart until November 2009, long after the effective date of the ADAAA. Thus, the ADAAA would apply to Plaintiff.

reasonable accommodation because there is no issue regarding an accommodation at all. In other words, to determine whether an individual is "qualified," before even reaching the issue of whether any reasonable accommodation can enable the individual to perform the essential functions of the job, it must be determined whether the individual can perform the essential functions of the job. Here, Wal-Mart takes the position that because Plaintiff testified that she could perform all of the essential functions of her job, the issue of reasonable accommodations should never be reached. To support its position, Wal-Mart cites Grabow v. Independent School Dist. No. I-008, 86 F.3d 1166, 1996 WL 282166 (10th Cir. 1996) (unpublished opinion) (table), Chandler v. City of Dallas, 2 F.3d 1385, 1393-94 (5th Cir. 1993), cert. denied, 511 U.S. 1011, 114, S.Ct. 1386, 128 L.Ed.2d 61 (1994), and Novella v. Wal-Mart Stores, Inc., 226 Fed.Appx. 901, 903 (11th Cir. 2007) (unpublished opinion).

While Wal-Mart's argument is legally sound, it assumes that Plaintiff is able to control her sugar levels on the job through testing and administration of slow and fast-acting insulin. In this particular case, Plaintiff had been granted ready access to her equipment until a particular point in time a couple of weeks before the diabetic incident. Thus, Plaintiff reached a point where she could not perform the essential requirements of her job if she did not have ready access to her equipment, or, at least, if you accept Plaintiff's version of the facts, that is the case. Thus, a genuine issue of fact exists as to whether Plaintiff was a qualified individual with a disability.

Wal-Mart next argues that even assuming Wal-Mart did have a duty to provide a reasonable accommodation, Plaintiff cannot prove discrimination for failure to permit her to keep her insulin and testing materials in the meat department as opposed to the back of the store in a locker. To resolve the issues at hand, the medical testimony and records must be considered. The medical evidence consists of three depositions with medical records attached as exhibits: (1) Dr. Anthony Morrison, an endocrinologist practicing at USF; (2) Nancy Groves, his ARNP[23] who treats diabetic patients, and (3) Linda Hubsmith, another ARNP from a different physician's group, who had been treating Plaintiff before the onset of diabetes. A review of the dates of office visits suggests that Plaintiff was treated by all three from the time of her first hospitalization in August 2008 through March 2010. Based on the medical testimony, it is apparent that individuals with Type I diabetes suffer with bouts of both high and low blood sugar.[24] Diabetic ketoacidosis (DKA) may occur with high blood sugar, and a diabetic seizure may occur with low blood sugar.[25] Although Dr. Morrison opined that Plaintiff probably suffered from DKA in August 2008,[26] the hospital records from Plaintiff's first hospitalization are

---

[23] Advanced Registered Nurse Practitioner.

[24] See docket 34-4, depo. of Dr. Morrison, pp. 18-20.

[25] See docket 34-4, depo. of Dr. Morrison, pp. 18-21.

[26] See docket 34-4, depo. of Dr. Morrison, pp. 20 & 48-49.

not a part of the record.[27] The hospital records do show that Plaintiff suffered from DKA on March 10, 2010;[28] yet, there remains evidence that Plaintiff suffered seizure-like symptoms at Wal-Mart on that day.

A review of the medical testimony reveals conflicts regarding the needed proximity of Plaintiff's testing and medical equipment.[29] Based on these genuine issues of fact concerning the failure to provide reasonable accommodation, the Court finds summary judgment inappropriate.

## Constructive Discharge

To prove a constructive discharge, the Plaintiff must show that the employer "imposes working conditions that are so intolerable that a reasonable person in [the employee's] position would have been compelled to resign." Fitz v. Pugmire Lincoln-Mercury, Inc., 348 F.3d 974, 977 (11th Cir. 2003) (quoting Poole v. Country Club of Columbus, Inc., 129 F.3d 551, 553 (11th Cir. 1997)). Although Wal-Mart argues that the facts do not rise to the level of egregiousness required for constructive discharge, viewed in the light most favorable to Plaintiff, a jury could find that requiring a diabetic such as

---

[27] Hospital records show that she was hospitalized in January 2010 for DKA. See docket 34-2.

[28] See docket 32-2, Exh. B.

[29] While for purposes of summary judgment the Court must accept that Plaintiff requested an accommodation, the record shows that this issue is contested and denied by Wal-Mart, and at trial, it is very conceivable that a jury may find that Plaintiff never requested accommodation at all.

Plaintiff to keep her testing kit and insulin in a locker in the back of the poorly-cooled store, and threatening termination if she goes to the locker during her shift, constitutes constructive discharge.[30]

**Negligent and Intentional Infliction of Emotional Distress**

Florida has a long history of invoking the "impact rule" for the tort of negligent infliction of emotional distress. R.J. v. Humana of Florida, Inc., 652 So.2d 360 (Fla. 1995) (citing its origin in International Ocean Tel. Co. v. Saunders, 32 Fla. 434, 14 So. 148 (1893)). In this case, the impact rule precludes recovery for negligent infliction of emotional distress because Berard cannot show that her emotional distress flowed from physical injuries "sustained in an impact." R.J., 652 So. 2d at 362.[31] The record is clear that she suffered no physical injuries stemming from a physical impact. Plaintiff suffered a diabetic event and her co-workers moved her to a safer place away from on-lookers. She was not otherwise injured in the move.

Characterized as an exception to the impact rule, intentional infliction of emotional distress may be actionable where the conduct causing the emotional distress is

---

[30] Accord Countryman v. Nordstrom, Inc., 2007 WL 38912, * 6 (D. Minn. Jan. 5, 2007) (discussing that "a reasonable person could conclude that restricting the ability of a newly diagnosed diabetic to take frequent breaks to test her blood sugar and prevent or treat insulin attacks which could result in serious health problems, constitutes intolerable working conditions.").

[31] See also Rivers v. Grimsley Oil Co., Inc., 842 So.2d 975 (Fla.Dist.Ct.App. 2003) (holding that employee cannot recover from employer for psychological condition suffered as a result of robbery at place of employment; side effects from medication do not constitute physical injury under impact rule).

outrageous.  R.J., 652 So.2d at 363 (citing Eastern Airlines, Inc. v. King, 557 So.2d 574 (Fla. 1990)).  The conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  R.J., 652 So.2d at 363 n. 2 (quoting from §46 of the Restatement (Second) of Torts (1965)).  First, the record is devoid of any malevolent intent on the part of the people who moved her to injure her or subject her to ridicule, and second, even if Wal-Mart did intentionally refuse her the ability to obtain quick access to her supplies, such conduct does not amount to the outrageousness required by law.  See Golden v. Complete Holdings, Inc., 818 F.SUPP. 1495, 1499 (M.D. Fla. 1993); Gillis v. Sports Auth., Inc., 123 F.Supp.2d 611 (S.D. Fla. 2000).  This record is devoid of any harassment.  Accordingly, summary judgment is granted as to both negligent and intentional infliction of emotional distress.

It is therefore **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment (Dkt. 30) is **DENIED** in part and **GRANTED** in part.  Summary judgment is granted as to Counts II and III for negligent and intentional infliction of emotional distress.  The case will proceed as to Count I only.

**DONE AND ORDERED** at Tampa, Florida, on October 4, 2011.

s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record